The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this honorable court may give their attendance and they shall be heard. God save the United States of America and this honorable court. Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The case today is Saqab Saudi Holding Company v. Saad Khalid Aljabri et al. Appeal number 22-1052. Attorney Gottlieb, please introduce yourself on the record and proceed with your argument. Thank you, your honors, and may it please the court. Mike Gottlieb on behalf of the plaintiff's appellant and I ask to reserve three minutes of my time for rebuttal. Okay, you have them. Thank you, your honor. All of the issues before this court can be boiled down to a single question guided by a straightforward principle. The question is whether dismissal was the only option available to the district court following the government state secret's privilege assertion. And the principle that makes that question dispositive is that dismissal on the pleadings is a draconian and drastic remedy that should not be readily granted. Only when no amount of effort and care on the part of the courts and the parties will safeguard privilege material is dismissal warranted. The district court's reasoning for dismissal appears in a single sentence in its October 26, 2021 order, appearing at page 1062 of the appendix. In that it says, while the plaintiff has shown through non-privileged reports of its forensic accountant the movement of funds allegedly expropriated, any attempt by defendants to rebut those allegations would necessarily result in the examination and disclosure of privileged information. The problem is that the record renders that conclusion indefensible. Not only did Al-Jabri file an answer before the district court engaging with the facts, he submitted numerous public filings in the Ontario action, including a 100-page factual affidavit in which he actively and openly engaged with the substance of Sakab's allegations without ever examining or disclosing privileged information. What's more, the government and Al-Jabri had each agreed that the court need not decide at this time whether dismissal is warranted. We respectfully submit that the district court's sua sponte dismissal must be reversed for at least three reasons. First, the government's protective order would have eliminated- Your Honor, we would submit that at this stage there's absolutely no way to determine that from the record, and that's why most cases involving the applications of the state secrets privilege based on a defense get decided at the summary judgment stage. Except the government's assertion here of state secrets is so broad, it's just hard to understand how it wouldn't implicate something in the breadth of what the government is alleging here. Of course, Your Honor, that's not the standard. The standard isn't whether it would have some effect. The standard is whether it would prevent the defendants from raising any available defense or any attempt to rebut the allegations, which is what the district court held, and I would respectfully submit if this court simply reads the factual affidavit that Al-Jabri himself filed in the Ontario action, which appears at page 1215 of the appendix, it goes through in excruciating detail evidence, exhibits, and records with respect to his position on the merits. These are not even legal defenses, but on the merits of the payments that my client has alleged were fraudulent, and I point out at page five of their brief, my friends for the defendants say to decide this case, the court would have to ask were the payments authorized by whom and for what, and they say none of those questions could conceivably be answered, but that factual affidavit answers that the payments were authorized. It says by whom and for what purpose, and to give you just an example, the factual affidavit has a 20-page long section with more than 70 paragraphs. It appears at pages 1270 to 1291 of the appendix, and it summarizes all the categories of payments that Saqqab has alleged to be fraudulent, and they appear in a particular chart at pages 1290 to 1291 of the joint appendix, and Al-Jabri lays out hundreds of millions of dollars of payments and transactions discussed in the 20 preceding pages. Only one line of that chart, if you look at it, and it amounts to about $76 million of the total amount of hundreds of millions of dollars in fraudulent payments, refers back to any reference in the affidavit of an inability to explain the payments because of the top secret nature. And if I could give you one other example, Al-Jabri has alleged that he received hundreds of millions of dollars in patronage payments from bin Nayef and other members of the royal family and the government, but he claims these were discretionary payments that were authorized by bin Nayef, King Abdullah, and others. So he's not only said, were the payments authorized? He said, yes, they were. He said by whom, bin Nayef and King Abdullah, and he said for what. He said they were discretionary. He said that they were for loyalty for a service, and he's also said that he has no personal knowledge on how these payments were calculated or broken down or explained. And so there are two sort of takeaways from this. One is he has mounted a defense on the merits separate from the legal defenses, and the second is it's unclear whether any of this discussion about counterterrorism programs tied to the United States and the like would bear any relevance at all because they might not even be admissible. We would make the argument that they're not because he's already said he has no knowledge of how these payments were calculated. If you go through that affidavit, you'll see there's numerous additional examples. We've alleged fraudulent valuation awards. He's only said that a subset of those payments he can't address because of classified information. We've alleged fraudulent real estate transactions and kickbacks, fraudulent profit distribution. But just because he doesn't know does not mean that he would not need to probe in some kind of discovery effort what the basis of those payments were, which could involve top secrets. And there might be, Your Honor, once this case proceeds along into discovery, there might be certain claims, in other words, certain categories of payments that the court could determine simply can't be in the case because they involve information that's classified. But what the district court did is something quite different than that. The district court said now, without looking at any of that, without even taking a motion to dismiss, I'm just going to throw out the whole case, even though it involves hundreds of allegations of payments and different wire transfers in different categories. Counsel, I just want to, if I may, ask a question, just a point of clarification. With respect to the phrase, any valid defense, is your position that if he's deprived of a valid defense, that doesn't matter as long as he may have other defenses? Well, we think that the government's explanation of this comes from the test and the in received case decisions. We think the government has explained the holding of that case well at page 30 of its brief. They've said the litigation could continue on the unprivileged record, which permitted the plaintiff to make out a prima facie case, and the defendant to raise at least some defensive merit arguments, but the court also held the subject matter of the case was not a state secret. And we think that's a pretty good statement of what in received case stood for, but also a good statement of the rule, which is, if the defendant's able to make out some defenses at all, then we're not talking about the kind of test that the Wikimedia Fourth Circuit Court applied, because in that case, the court essentially said, look, the subject matter of this case, which challenged NSA collection upstream efforts, is itself a state secret. There's no way the government can litigate standing, which is the only defense that the parties were talking about in any event. So we're not in that place. In received case stands for the proposition that you can't just take a theoretical or hypothetical defense. And again, these cases usually are decided at the summary judgment stage, but you've got to actually have a defense that can be demonstrated to be dispositive. So I think that however the court interprets in received case, there's just no conceivable way that the defendants in this case satisfied the standard for it because they haven't demonstrated a dispositive defense that the privileged evidence would be essential to or that they couldn't make out the defense. Five minutes remaining. Five minutes. Let me ask, obviously you're requesting a remand. If there were a remand, what would you propose that would be the appropriate course of action then for the district court? And I assume you're not contesting that the judge reviewed the materials, said that's, you know, that's subject to the protective order. You have no issue as to that, correct? Correct. We're not challenging the invocation of the state secret privilege. What we challenge is the court's sua sponte dismissal following its holding that the privilege was validly invoked. We think the district court has numerous options available to it on a remand. The first is that it could simply stay the case. We think that there were clear and valid and persuasive reasons for a stay in this case when you have a parallel proceeding with the same parties and issues. The district court never considered any of the factors that a court traditionally considers when you have a first filed foreign action in parallel proceedings. Those are laid out by the Dunkin' Donuts case that we've cited in our briefs. We think that the court, when it did that, made a legal error in refusing to record our memorandum Liz Pendens. Did you ask for a stay simpliciter or did you tie it to a Liz Pendens or even an attachment? We filed a motion for a stay in the state court proceedings, Your Honor. We did not have the chance to file briefs. What happened was we were briefing the motion for a protective order and in the briefing for a protective order, the court made it to a sponte holding that dismissal was required. We had asked for an opportunity to file a Rule 64 motion that would include our request for an attachment. We had also asked for the opportunity to brief the comedy factors, which would have included arguments in favor of a stay in deference to the Canadian proceeding as well as arguments for why the court did it. To try to get an answer to Judge Howard's question, are you saying that you would be satisfied just with a stay without an attachment? We think that an attachment should issue, of course, but we would be satisfied with a stay and the recording of a memorandum Liz Pendens, which we believe is not discretionary under the terms of the Massachusetts statute. Wait a minute. Judge Thompson? No, I was saying that's a lien. That's not a plain old stay. It's a stay, but also we believe that under the Massachusetts statute governing the issuance of a Liz Pendens, that turns on the subject matter of the suit rather than its merits. We also think there's a governing case law from the Massachusetts Supreme Court that says that the intent of the Liz Pendens statute is to give notice to third-party purchasers so that they're on notice of a prospective purchase. Importantly, in this case, there's a receivership order that was granted by the Ontario court. That receivership order appointed a receiver over the subject properties that we brought this action over and requested that United States courts give effect to that receivership order. We brought this action in part to give effect to that order, and we believe that the entry and recording of a Liz Pendens memorandum is appropriate for that reason. Counsel, let me ask you a question that is somewhat related to that. What is your position with respect to the issues that you have raised in this appeal? Will our decision on those issues have a legal effect on the Mareeva injunction that is in place in Canada, either to its scope or its enforcement by the Canadian courts? And you can reframe that question however you want. I'm just asking for some clarification. I'm not entirely clear on the question, Your Honour. To the extent that you're asking, Aljabri has used the dismissal in the district court and taken it to Canada and in Canada argued that in a federal proceeding in Canada which relates to the Canada Evidence Act, that Canada should do essentially the same thing that the district court did here. As a practical matter, that's going on, but I assume that your side is resisting that in Canada. Does a decision by us either way have any effect on your arguments in front of the Canadian court as to either the scope or the enforcement ability of that court to enforce the Mareeva order? I think that the underlying action here has the potential to affect in the sense that the Mareeva order in the Ontario proceeding, distinct from the federal proceeding, is accompanied by a receivership order and that receivership order depends on the recognition and effect of the relevant court in the United States, in this case, the district court in Massachusetts. We do think there is a relationship between, in that sense, the receivership order that's in front of the Canadian court and the action and the disposition of this case because the receivership order essentially can't take effect in an in-rem sense over the property without action from the district court in Massachusetts. Is there any in-rem property in Canada? First of all, there's in personam jurisdiction obviously in Canada in the form of the Mareeva order. I don't believe we have a receivership order in-rem, Your Honor, over property in Canada. I'd have to check that to be certain though. Just one more question. So you're saying the receivership is only for the benefit of property in the United States and not in Canada? No, Your Honor. Again, I apologize. I don't have the receivership order right in front of me, but I will check it and be prepared to answer during my rebuttal time. I know that it covers more than simply the Massachusetts properties. I'm just not certain as we sit here if there are properties in Canada. I believe it covers properties in Canada as I'm talking to you. I'm just not certain, but I will check and answer during my rebuttal time. One more question. So would it cover – I mean, assuming it's probably property in Canada, but does it include property in other countries besides the United States? I'd have to check the order, Your Honor. I will do that and respond to your question in my rebuttal time. I apologize. It's okay. Thank you. Thank you, counsel. Attorney Gottlieb, please mute your audio and video at this time. Attorney Gershengorn, please unmute your audio and video and introduce yourself on the record to proceed with your argument. Thank you. Good afternoon, Your Honors, and may it please the Court. Ian Gershengorn for Defendant's Appealese. As part of a politically motivated campaign to eliminate a potential rival to current Crown Prince Mohammed bin Salman, a Saudi Arabian company created in the wake of 9-11 to pursue covert counterterrorism operations in the Middle East filed trumped-up fraud claims against the former head of Saudi intelligence to challenge payments and transactions related to those counterterrorism operations. The United States intervened and asserted state secrets privilege over broad slots of information essential to the case. That privilege was upheld, and as you've heard this afternoon, it is unchallenged here. Given the breadth of the privilege assertion and the centrality of the information to the case, the case could not be litigated without threatening disclosure of the protected information. One could not begin to answer the most basic questions at the core of the case. Counsel, Mr. Gottlieb has said that in the Canadian action that there has been a response file that spans more than 100 pages. Is it your position that what is said in that filing would not be sufficient to give him a viable defense? That's correct, Your Honor. In fact, what Mr. Gottlieb omitted is that in that statement of defense, 13 separate times my client indicated that he could not give the details of the defense that he was setting forth because it was classified or confidential information that he was not at liberty to discuss. What is also the case, and this is critical, Your Honor, for the Canadian proceedings, is that despite the other side's efforts to suggest that those proceedings are quite advanced, in fact, in the most relevant sense, they are behind this case. The Canadian proceedings are in the midst right now of the proceedings under Section 38 of the Canadian Evidence Act to determine precisely what information would be covered by the Canadian equivalent of the State Secrets Act. And so they are actually undergoing now the very process that happened already with the United States and with the district court below. And so the idea that somehow there has been a full and fair defense or even any defense in Canada is just not accurate. There's been no discovery. There's been no determination of what information that my client, Dr. Saad, would like to use is available. And right now, the Canadian government, at the request of officials within the Canadian Intelligence Service, the equivalent of the CIA and the USIC here, are going through this Rule 38 proceeding. So the idea that there's been a proceeding in Canada that's relevant is just not correct. So what I'd like to do this morning in addition to that, Your Honor, is just sort of address in turn the district court findings, explain why we can't possibly litigate this case without the privileged information, and then talk a little bit about motion to dismiss and why a stay would be inadequate. Let me before you begin. Yes, sure. The dismissal here was to a sponsor by the judge. The plaintiffs, in my view, I think, did not have perhaps an opportunity to address, you know, perhaps the arguments that are being made now before the district court. Shouldn't there be at least some due process? The result might be the same. But aren't they, at least the plaintiffs, entitled to make some showing or proffer to the district court as to how they perhaps proceed? They can proceed with the case, because we don't have that in the record. We don't have that position. So, Your Honor, I think you do have that position, and I think our response is that they did have full due process, and I'll explain why. What we said in response to the broad scope of the privilege and in response to the scope of the protective order is that we said dismissal is warranted, but we are unable because of the protective order to even file a motion to dismiss. What the district court then said was, in response to those concerns that the plaintiffs can't defend themselves or even file a motion to dismiss, that's at page 1116 of the appendix, the case, the judge thought, would likely have to be dismissed. But the district court then did not dismiss the case. What the district court did was issue an order to show cause, which allowed the plaintiffs to make the very kinds of arguments that they made here. And what they said in that filing, which is in the record, Your Honor, is that the court didn't have to reach it, which was the primary argument below, because of prejudgment, attachment, or lease pendants, and that in any event, dismissal was unwarranted. And then, of course, the district court reviewed the confidential materials and made a series of findings on the record that said, and it was not just a single filing, right? What he said was the factual issues at the core of this case are intertwined with the government's assertion of the privilege. Any attempt to rebut these allegations would necessarily result in the examination and disclosure of privileged information. He said if the action is not dismissed, the scope of the privilege, quote, is and likely will remain in dispute throughout the case. He dismissed our counterclaims on the ground that they ineluctably depend upon privileged information. And he said that the fundamental hindrance to proceeding is that the assertion of the privilege has removed, quote, a prodigious amount of relevant evidence. So the district court made a series of findings. I'll also say, Your Honor, like, it's just not clear what a revand would do. The district court reviewed the record. He reviewed the classified filings, and he made this statement. And the other thing I'll say, Your Honor, is that, of course, we're up here on, you know, sort of de novo review with due deference to the sort of district court's judgments about how the litigation would proceed. I presume that Your Honors have read the classified declarations, which gives you an upper hand as to me because I have not. But I think Your Honors are well positioned to make exactly the kind of judgment in a de novo review with due deference to the district court, who is an experienced district court judge, about how the litigation would proceed. And so I think not only was there a full process below, but really it's a pointless remand since none of us, the parties, normally a remand would be we would be able to argue the evidence to the district court. But, of course, we can't do that here because none of us, with the possible exception of Mr. Yellen, can see the information. So let me explain, then, why the district court was absolutely correct to say that the case could not be litigated. It seems to me there are three main points. The first is the one Judge Thompson started with, which is the breadth of the privilege, right? If any information concerning activities or interests of the intelligence community, this is not a situation where the United States is asserting state secrets over discrete pieces of information like a sealed case, it was specific IG reports, or even specific, you know, weapons plans, right? This is an extremely broad assertion. Second, this goes to the core of the case, right? It is who authorized what payments for what activities. It's responding to the 600-page Deloitte report, which had funds flowing in and out. Where are those funds going and for what? The suggestion is the quote-unquote poor record keeping is evidence of fraud. Our position, of course, is that it's evidence and persuasive evidence of clandestine activities, right? So that's the core of the case. And third, the practical effects, which, again, an experienced district court judge was in a position to understand, was that it just as a practical matter couldn't be litigated. We couldn't generate a witness list that would be classified. We couldn't exchange relevant documents about where the payments went. We couldn't get more than two questions into a deposition, right? The questions about funds flow, knowledge, our defenses, ratifications, statutes of limitations, those depend on who authorized these operations. When did the relevant authorities in Saudi Arabia know of the classified operations? So, I mean, I think from start to finish and what the district court recognized was that it couldn't be litigated. So there's some suggestion. Can we go back to your motion to dismiss? It's my understanding that when you were attempting to prepare it, you had several back and forths with the United States. Is that correct? We did, Your Honor. And they rejected each draft of your motion to dismiss? So I don't think that they rejected any drafts of the motion to dismiss. What we said was we would like to file a motion to dismiss that explains why the things we're saying at a very general level, like we did in our appellate brief, that the payments are for compensation, that they reflect the profits off the book, profits for activities involved with clandestine activities, that some of the funds were used to finance and carry out counterterrorism operations. We wanted to put that in, and the United States said, I'm sorry, I hope this will be directly responsive. What the United States said was you cannot get an exception to the protective order to put in that evidence. And they had an extremely broad protective order, and I think you'll hear Mr. Yellen say, as he did in his brief, that they do not support any modification of the protective order to allow us to make that. So we did not get to submit to the United States, Your Honor, the motion to dismiss that we would file. We did not submit to the United States all of the details of what my client would like to say to explain the payments. So none of that was submitted to the United States in a draft motion to dismiss or anything like that. But the discussion was at a much higher level of generality. We said we'd like to modify the protective order to allow this. They said, no, you can't do that. That was that the judge didn't rule on that because it was mooted out. So, Your Honor, what I'd like to hit next, if I could, is the suggestion that somehow this is a dismissal at this stage of the proceedings is somehow unusual or improper. Five minutes remaining, five minutes. It most certainly is not. So there are a number of cases that have gone off on a motion to dismiss, cases like Sterling, El-Masri, Jefferson, Zuckerbron, Edmonds. So there are numerous cases like that. But I think more important is Mr. Gottlieb is relying on this idea that somehow courts have invoked a motion for summary judgment to suggest it's not appropriate at this stage. But I think the court addressed this in the Zuckerbron decision, the Second Circuit with Judge Winter, where he said what's going on in many of these cases is it's just not clear whether that is technically a motion to dismiss or whether it's technically a motion for summary judgment because, of course, the court is looking at the Declaration of the United States and considering that and all of the pleadings. What's critical in these cases, though, is that in most of the cases, there is no discovery after the United States asserts the privilege because it is precisely that that triggers the kind of analysis that the district court went through and that, Judge Thompson, your questions were going to earlier, that basically suggests that discovery can't go forward. And, indeed, it's precisely because the United States doesn't want the intelligence community responding to massive discovery requests. It's because it knows that there's a risk of disclosure from probing questions and discovery, that documents can't be exchanged, that the cases unfold that way. I will also say that it does seem important that the other side has made something of the fact the United States itself didn't move to dismiss. I would suggest that concern is really misplaced here. The reason why the United States usually moves to dismiss is, in most cases, the United States is the defendant or a government employee is the defendant. But in a case, for example, like White from the district court in this circuit, there was no government motion to dismiss. It was a private party dispute. The court dismissed it on its own without waiting for the government, and we think that makes sense in a case like this where the government isn't a defendant, and partially that's because the government doesn't have the same interests, but partially it's because it is the district court's job to make the relevant decisions. The relevant decisions are, could the defendant fairly defend itself without the information, and as a litigation matter, is there a risk of disclosure from allowing the proceedings to go forward? And those are things that are certainly within the district court's wheelhouse. The district court made that judgment here, and it was proper. So the other suggestion, I think, has been that somehow the court should stay this case. So could you put forth a meritorious motion to dismiss based solely on what has been disclosed in the Canadian court? No, Your Honor, and that goes to the suggestion we made earlier that although we did file a lengthy statement of defense, if Your Honor will look at that, and it's in the appendix, at 13 different times what we said was, we can't continue to talk about this, we can't give you the details, because we are unable to do so consistent with our obligations to keep confidential information confidential, classified information classified, or in Canada, sensitive and potentially injurious information out of the public record. That is exactly what's going on, that analysis of what we'd like to say and what may or may not be covered by the privilege, that's exactly the analysis that is going on at this very moment, or in this very time period, in the Section 38 proceeding up in Canada. And so the answer to Your Honor's question is no, of course not, because our main defense, Your Honor, like you filed this massive report and said that my client stole, those payments are authorized compensation for counterterrorism activities in coordination with, or often in coordination with the knowledge of the United States. And so that is our defense, this isn't some tangential thing that we brought in at the last minute. That is our core defense. So if we stayed the action and let the Canadian proceeding proceed, what would that do? So, Your Honor, so let me answer that two ways. Without a lien. Okay, so without, of course, what I heard today is that's not actually what they're looking for, that's not what they asked for below. What they're looking for is a stay with the pre-judgment attachment release pendants. I could get into why that is both unprecedented, contrary to the text of the statutes, but I take Your Honor to be asking a separate question. The answer to that question is I think we have the right to defend the complaint that's been filed against us, that there are ten fraud counts in the complaint. None of those, by the way, include a count which one might normally expect, which is under the Massachusetts Recognition of Foreign Judgment Act. There is no count under that statute, nor is there any request for recognition under comity. So we think, Your Honor, it's not appropriate in this situation to just put something on hold pending over my client's head. Of course they can refile after they have a Canadian judgment if they get one, and they're welcome to. If I could make one more point to answer a question that you had for Mr. Gottlieb. This is a worldwide Moravian injunction, and there are pending enforcement actions against my client in countries around the world. And so that's why I said at the start this is part of a campaign against my client to weaken him and cause him to return to Saudi Arabia. And so I think it's actually quite important, Your Honor, that this is not sort of part of a single attempt to isolate Massachusetts property. It's part of a worldwide campaign, and we are defending in countries around the world. Yes. Relative to the request for prejudgment liens and attachments here, is it your position that the plaintiff would need to make a likelihood of success showing in each of those requests, and you're hampered by the same state secret problem? That's precisely correct, Your Honor. The text of Rule 4.1a in Massachusetts, Massachusetts Rules of Civil Procedure, could not be more clear. It says the prejudgment attachment is available only upon a finding of reasonable likelihood of success. And so it is exactly correct that the statute, the Massachusetts statute, requires that. And, you know, even if, you know, this court were inclined to create an atextual exception, for the reasons I said earlier, this would not be the right case, right? What they're asking for is a deference to a Canadian Moravia injunction that was issued without any consideration of the critical state secrets information that the district court reviewed below and said was intertwined, that said without it we could not possibly rebut the allegations, and that deprived us of all our defenses. And so if the court were ever inclined to forego a likelihood of success analysis, which it can't do under the statute, this would be the single worst case to do it, because you are deferring to something where we literally have not had a chance to offer the merits defense, you know, that we would need. And the same analysis is true with respect to the Lease Pendant Statute, Your Honor, as a textual matter, right? The legislature provided that we can file a special motion to dismiss that allows us to seek dismissal on the basis of a valid legal defense. That is in the statute, and we can't do that. Now, you know, essentially what they're asking for... Counselor, you answered my question saying that you had a right, your client has a right to defend against this action, which sort of strikes me as certain reputational issues. But practically speaking, if we save the matter, does it do anything... This goes back to Judge Howard's question. Does it do anything to the case, the spending in Canada, if there's just a stay in place without enforcement of any kind of lien? So, Your Honor, I don't think it as a... So, first of all, I'm not an expert on Canadian law, and so, you know, what would be, you know, the effect in Canada, you know, is up to the Canadian court. But I can say a couple of things. First of all, of course, we are subject to a worldwide Moravia injunction, which, you know, for under the proper legal standard, et cetera, is, you know, is punishable by contempt in Canada. And so, you know, we are subject to that, regardless of what this court does. Second, you know, the main concern, you know, is that there is a state secrets determination. That is not, you know, again, it's up to the Canadian courts to do what they think is appropriate. It, of course, is relevant to the analysis that the district court found there was, you know, the state secrets assertion was valid, that he found that the dismissal was appropriate. And so, you know, it would be evidence, but we're not, you know, anything beyond that is up to the Canadian court. But we really do think it's not right, even, you know, sort of, I'm taking the question, again, to be assume away lease pendants, assume away the prejudgment attachment. We really just don't think that's a proper use of the U.S. courts. They haven't pled that. What they have pled is 10 fraud claims. They have not pled an enforcement of judgment, a recognition of foreign judgment. Let me ask you a question about that, if I might. In the U.S. action, I assume it's an impersonum action itself? It is, yes, Your Honor. It's a fraud claim against my client. And was there a request, has there been a request made for the entry of a Mareva-type injunction here in the U.S. in this action? So I think that that's, you know, essentially that's the equivalent of the request for a prejudgment attachment, if I'm understanding Your Honor's question correctly. And they did make such a motion in the district court for a prejudgment attachment, and that motion was transferred. They made that in state court. That motion was transferred to the district court along with the rest of the case, and so that request was, yes, made below, if I'm understanding Your Honor's question. What they asked for was prejudgment attachment of the Massachusetts properties. I don't think as a matter of, I don't think they have requested a worldwide. I was asking specifically whether they've asked for a Mareva injunction here as to, you know, all U.S. assets. I misunderstood, Your Honor. I apologize. I do not believe that they've asked for a worldwide Mareva injunction in the United States. That's what they, you know, those kinds of things, you know, are not in the Supreme Court. And the Grupo case has made very clear that it takes a pretty dim view of the court's exercise. Well, as you know, we think we know the answer as to damages claims, but not necessarily as to equity claims. And a lot of the claims here are sound in equity, which is why I was asking the question. Yes, Your Honor. And I guess I would say one thing about that, since Your Honor has asked it. You're exactly right. Of course, Grupo was about damages claims. But I do think this is pretty far. It is, as a technical matter, a constructive title case. But it is pretty far from the heartland of those cases because the allegations here are through tracing, right?  fraud. What the allegation is, is that we have purchased, we have embezzled or fraudulently conveyed to ourselves money, which can be traced to the later sort of innocent purchase of property. There are states in this country that will not, for example, recognize lease pendants in a tracing situation. So I think, Your Honor, if you were to resolve this question that Your Honor has flagged about how difficult one, because we're really far from the heartland. This is not, they gave my client, you know, I gave my client money to buy a house and he bought it for himself, not for me, which is kind of the core kind of equitable claim. I think for this court to reach out and do a Grupo kind of injunction in a tracing kind of claim would be really extraordinary and I think would really trod new ground. Thank you. In the rule 38 proceeding that's going on, could Canada conceivably disagree with the district court's assessment here and say that no, these, this does not constitute state seekers from our perspective? So the answer to that, my understanding is yes. It's an independent, it is an independent judgment. My understanding is that, and from public filings,  but my understanding is from public filings that the United States has indicated that it is monitoring the section 38 proceedings. I don't know, obviously not in a position to know, you know, sort of communications between the United States and Canada, but I, but my understanding is it's an independent assessment, just as if, just as the U S the United States assessments of state secrets is a U S assessment. But of course, you know, they would take into account the views of our allies and things like that. But it's, it's ultimately, that job is ultimately for the Canadian federal court in, you know, in the process that they have there, which involves discussions with among others, the Canadian AG. Was there a claim of Canadian state secrets? So your honor, that is the section 38 proceeding. The section, the proceedings under section 38 of the Canada evidence act are, as I understand it, the equivalent of our state secrets and yes, those proceedings are happening right now. There's been no result of that. That's why. But I'm saying they involve Canada's state secrets. Correct. The technical term under Canadian law is whether it's sensitive or potentially injurious information. That's their, that's their equivalent, which would have, which is defined to be. And if you just give me one sec, your honor, Potentially injurious information is information of a type that if it were disclosed to the public could injure international relations or national defense or national security and sensitive information is information relating to international relations or national defense or national security. It is in possession of the government of Canada, whether originating from inside or outside Canada. And is it of a type that the government of Canada is taking measures to safeguard. So that's the analysis that's going on in the section 38 proceeding. And so that's what, you know, that's what, that's what maybe may go on. It is my understanding, although again, I'm not an expert in Canadian law that it can include information that would be sensitive to our, to their allies, just like we would, we can assert in the United States state secrets over information that is sensitive to our allies. But ultimately the determination is for the Canadian court, the Canadian federal court to make. Counselor, let me ask you, the state secret determination is unchallenged. You're not challenging it. The plaintiffs are not challenging it. So I would suspect that we as a court don't have to, that's not being appealed per se. We don't have to go and review what judge Gordon determined. He saw that in camera. We don't have to do that exercise again, right? We can just part from that premise. It's, it's, it's state secret, correct? Yes, your honors. But I'd like to answer if I could, because I just want to make sure I understood your honors question. It is absolutely correct that you do not have to re-review the information in order to determine whether it's proper, whether the state secrets privilege is properly invoked. I understand that to be unchallenged. We certainly don't challenge it. We think it was correct. And I don't understand plaintiffs from Mr. Gottlieb's argument this morning. I think he said that was unchallenged. We do of course think it's appropriate for you to review the declaration to see how it impacts, you know, the litigation in the case. And I presume the court has done that, but that's to determine whether dismissal was appropriate, not to determine whether the invocation of the state secrets privilege was appropriate. It's sort of the second step in the analysis, not the first step. Thank you counsel. Okay. If the court has no questions, the district court decision should be affirmed. Thank you. Thank you. Thank you. Attorney Gershengorm at this time, please mute your audio and video and attorney Yellen, if you could unmute your audio and video at this time and introduce yourself on the record to begin. Good afternoon, your honors. I'm Lewis Yellen from the department of justice. And I'm here today on behalf of the United States. Your honors, there are three points I'd make like to make about the applicable legal principles and one procedural point. And of course I'm happy to answer any other questions the court might have. The first legal point I'd like to make is about the question of a district court's sua sponte dismissal of a case on state secrets grounds. Of course, the United States has not taken a position on the propriety of dismissal in this case. We've not said one way or the other, but as a general and abstract matter, it is not inappropriate for a district court to make a sua sponte determination that a case must be dismissed on state secrets grounds. After all, the standard is that a court should dismiss as soon as it becomes apparent that any further litigation would risk disclosure of state secrets. And that may occur at any time when there is, or is not a motion to dismiss or motion for summary judgment present. So it is not. Does the government usually maintain a neutral position in these kinds of cases? So I guess the answer to that is not always your honor. The position that the United States takes is driven by the national security interests it's seeking to protect. And the scope of issues that the government addresses is itself informed by the government's national security interest. So that informed the decisions about what issues to address in this case and what issues not to address in this case. I'd also flag for the court that we're keenly aware, aware that the state secrets privilege is a cudgel and can have dramatic effects on litigation. And the attorney general's policy with respect to the state secrets privilege assertion is that the United States should try and effectively narrowly tailor its assertion of state secrets. Now I want to underscore since on this last point, that does not mean that we think the United States has to propose that dismissal is appropriate in order to protect state secrets, especially in cases such as this one between private parties, not against the United States. The district court has a bird's eye view of the litigation and is in a position to make determination score itself about whether dismissal is appropriate or not, even if the United States has not proposed a dismissal as the proper remedy. The second legal point. Interesting to me though, that the privilege asserted was a lot broader here than it was in cases like a sealed sealed case and Wikimedia. We know those assertions of privilege were much narrower than here because here they're just really broad. The assertions of privilege, your honor are dictated by the national security interests. The government is seeking to protect, and I should underscore that the scope of the assertion, the scope of the privilege that was asserted is not at all in contest in this appeal. All of the parties accept the district court's determination that the privilege is appropriate here. So I concede your honor that this is a broader assertion of immunity, excuse me, of state secrets than in some other cases, but each case rests on its own facts and on the government's national security determinations in the particular case. The second point I'd like to touch on is the, the colloquy that your honors had with Saqqab Saudi's council about whether other defenses could be considered before defenses involving potentially involving state secrets. And it's always in a district court's discretion to consider other bases for dismissal, but it is not the case that a district court has to consider seriatim, every available defense before reaching the state secrets matters that might implicate state secrets. And the reason for that, your honors is the question. The ultimate question is whether a court could offer any relief in light of the assertion of the state secrets privilege. And as the Supreme court said in general dynamics, and I'm going to give your honors a quotation, it is the claims and defenses together that establish the justification or lack of justification for judicial relief and quotation. But the point there is that if a court consider, if there are five possible defenses and one of them implicate state secrets, unless it's determined that the case can go forward and relief could be given, not withstanding a defense that might implicate state secrets, the case can't go forward. So again, just underscoring it, there is not a sort of requirement that all other defense five minutes, but that, that seems to be intention with the principle that dismissal should be a last resort, not a first resort. And, and so what if, what if the plaintiffs are correct that there may be other valid defenses, which they say have been put forward? I know we have to decide that, but. Well, as a, as a procedural matter, I don't think that makes a difference, your honor. If there are four, five possible defenses and any one of them might lead to dismissal, the ultimate outcome is that there would be dismissal. So the point would be that let's say the district court determined that, you know, goes seriatim and determines that each of the other available dismissals, the grounds for dismissal are not available, but that dismissal on state secrets grounds is required. Well, again, dismissal is the same ultimate outcome here. It doesn't matter that there were other possible grants for dismissal. I think the principle your honor identifies is absolutely the right principle, but that's just a question that goes to whether dismissal is required at all that just goes to the merits, so to speak of the assertion of a claim that defense is not available in light of the assertion of the state secrets. And that suggests that courts should undertake a very searching review to make sure that that claim is correct. But to use your example, if there were five defenses and four involves state secrets and therefore it couldn't be used, if there was one viable one that didn't involve state secrets, should the action be allowed to go forward? We'll know your honor for the action to be able to go forward. Any defense involving state secrets would have to be overcome, right? I mean, but suppose that was eliminated from the case if possible. I'm sorry, I'm not following your honor because if, if a defense implicate state secrets such that litigation would potentially risk disclosure of information, it can't be removed from the case. The privileged information, the state secrets are removed from the case, but the contention that of a defendant that I can't fairly and properly defend myself because I can't rely on facts, which are involved state secrets that is not removed from the case. That's the ultimate inquiry for a court. That's considering whether dismissal is required. Your point, your point is correct me if I'm wrong, that even if, if there's an inquiry into the defenses that don't involve state secrets, it doesn't actually matter what the ruling is on those because should the case stay alive, ultimately you're going to get to the state secrets defense. Yes, your honor. That's exactly the point I'm trying to make. You put it much more concisely. That's exactly the point. Confused about that. So thank you.  Counsel, following up on that question is, is there any way you're familiar with? I think enough of the case right now in the ghost opinion is, is there any way to litigate this case which involves state secrets at some point with the protective word? Wouldn't that be sufficient or this is a case that it's going to come up no matter what.  just help me. I regret that. That's precisely one of the issues that the United States has not taken a position on. And then I'm not able in this setting to take a position on now. What I can say is that, and this gets to the third legal point I was hoping to address is that in evaluating the district court's dismissal, the question this court should focus on in our view is whether or not the privileged evidence deprives the defendants of a fair and plausible opportunity to make a defense that could result in the dismissal of the case. And we strongly disagree with the Saudi suggestion that that involves a mini trial involving a, an analysis of the very evidence that was excluded from the case. The Supreme court couldn't have been more clear on this, that once the assertion is accepted, the evidence may have finished the statement. Thank you. The evidence is excluded from the case and the judges should not even consider that material ex parte in chambers and deciding whether dismissal is appropriate. And if I may, your honor, the procedural point that I'd like to make in it's very brief. The procedural point is if your honors decide to remand this case for any reason, including your honors imposing a state, we would ask that the court require the imposition of the protective order to ensure that any future litigation that would ensue once the matter is back in the district court properly protects the state secrets that have been implicated by this matter here. Okay. Let me ask you one final question. The parties are not challenging judge Gordon's determination that this is a state, the state secret involved. He reviewed the materials. Given that, I believe we as a court that is not being appealed that issue. We don't have to go and make that determination. Again, we can just take that for granted that it is state secret. Am I correct? Yes, your honor. You're exactly correct. That is not contested by any of the parties. And I think the court can take that as an established premise. I think the court may, if it deems it appropriate, look at the classified declarations that we have lodged with the court to make a determination about the propriety of the district court's dismissal, but in doing so, it would not be to consider whether or not the assertion of the state secrets privilege was appropriate in the first place. It would be to address the question of dismissal. Okay. Thank you. Any of my colleagues have any further questions? I just, I just have one. I just want to make sure I understand. And I'm going to use the defenses that were put forward here. Just the first three or two or three. So say for instance, there's a statute of limitations, there's a waiver, there's a shareholder ratification. So if, looking at the complaint, if there's an allegation of the last possible action of fraud or embezzlement, if it is beyond the statute of limitations, the court wouldn't necessarily have to look at state secrets in order to say that any action is beyond the statute of limitations and is therefore the law is not viable. But does that, does that necessarily involve the implication of state secrets? Your honor, what I would say is this, and this goes to the colloquy I had with judge Howard a moment ago, it certainly would be within a district court's discretion to consider that grounds of dismissal. And if dismissal were appropriate, it would be perfectly appropriate and fine for a district court to dismiss on that ground. But because the case could not proceed to the merits litigation without considering whether the assertion of state secrets deprives a plaintiff, excuse me, a defendant of a fair and proper opportunity to defend because it excludes certain necessary information and evidence. It is not essential. It does not require that a district court consider that state, that statute of limitations defense before turning to the state secrets defense because the state secrets issue is always a hump that has to be overcome in order to proceed on the merits. Okay. Okay. Thank you counsel. Thank you very much, your honors. At this time, if attorney Yellen would please mute his audio and video. And attorney Gottlieb, if you would reintroduce yourself on the record to begin, you have a three minute rebuttal. Thank you, your honor. Mike Gottlieb on behalf of the plaintiff appellants. First, I'd like to return judge Thompson to your question before the receivership order does apply to Massachusetts properties as well as shares in a the defendant used to siphon off funds in order to purchase. Those are the areas that it applies to. Mr. Gershengorn referred to, in talking about the evidence in the record in response to one of the court's questions about the affidavits that I'd mentioned, he referred repeatedly to a statement of defense in this case, and they made the same argument to the district court. These are two different documents. The statement of defense is the lawyer's submission to the Canadian court that includes information on their statement of defense. Jabari himself submitted a factual affidavit. And they are distinct and I would strongly urge the court to review the factual affidavit, which spans a hundred pages and includes more than 27 of our jobbers own exhibits. So when Mr. Gershengorn says no witness could testify, no documents could be submitted, no questions could be asked. Those are all flatly disproven by his own submission in the Canadian court. As to the statement of defense, which Mr. Gershengorn mentioned, he referenced 13 separate paragraphs. The reality. Wait a minute. So you're saying that, uh, that his individual affidavit doesn't make an assertion of state secrets. His individual affidavits makes only, I think one reference in it throughout the entire affidavit to a place where he was unable to further develop evidence on the basis of the U.S. counterterrorism programs in it. But it's specific to one example of two of eight companies in one subcategory of the payment. And this is my point. We have alleged fraudulent payments, hundreds of fraudulent payments, hundreds of wire transfers in multiple categories. He has alleged in his affidavit that he is unable to defend himself against a very narrow subset of those categories. And even if you look at the, and, and he has engaged on the merits on others. And so at this stage of the litigation, it is impossible to dismiss our entire complaint. It may well be the case, as I said, that litigation requires dismissal of some of those claims on a case by case basis. And that is exactly the kind of inquiry that the DC circuit in the in reunited state case urged and the Supreme court in the United States versus Reynolds when it remanded in the wake of a successful state secrets privilege assertion. But even if you look, for example, at the statement of defense, which Mr. Gershengorn talked about, I direct you to paragraph 87 at page 1362 of the appendix where he, he says our job, he was not involved in calculating any of these payments, but some of the payments were reward. And he best can't disclose additional information about these operations. So he's saying some of these payments I'm hindered from my ability to defend against some of them. I'm not, and we are entitled to proceed on the payments where he's not making that assertion. None of that was examined by the district court. It also shows why Mr. Gershengorn says they were, there is impossible for them to have filed a motion to dismiss. Why? They filed an answer. The answer engages with the facts in the case. They found a statement of defense in Canada and a protective order was in place. His real argument is not that he couldn't file a motion to dismiss. It's that he couldn't file a motion to dismiss that he thinks would be as effective if he had access to this additional evidence. That's not a reason. That's not a reason to dismiss the case as a whole. Could I make two additional points with the court? Go ahead. Mr. Gershengorn referenced a global campaign, and this goes to the status of the Canadian proceedings. Mr. Gershengorn referenced a global campaign against his client. That's unprecedented. There is no campaign. We've sought enforcement of a Mareva and receivership order where property that Aljabri used the proceeds of his fraud to purchase, which a respected court in Canada has held. We've established overwhelming evidence of fraud following a hearing with the cross examination of witnesses in a 7,000 page record and courts in the United States have indeed granted comedy to findings made by foreign courts in the, in the context of issuing Mareva orders, including the national union fire insurance case from Colorado. We cited the credit grind case from the district of Minnesota. We cited and others that we've cited in our reply brief. And Mr. Gershengorn said that the Canadian action is far ahead of where we are here because the section 38 proceeding is far ahead in Canada, but this is just, this is mashing up a bunch of different concepts and it's really important to separate them out. So first of all, the section 38 proceeding is a proceeding in federal court in Canada. And the only issue it addresses is whether this information that Aljabri is claiming that he must introduce the only, the only issue that the Canadian federal court proceeding will decide is, is it relevant? And is it sensitive? And if so, is it covered by the act? That's it. That proceeding has no effect over the Ontario court. As for the Ontario court, which has the merits of the underlying claim, the Mareva order and the receivership order, that case is now moving into discovery. So that case has gone through challenges on jurisdiction. It's gone through the set-aside, multiple set-aside orders on the Mareva order that were entered initially ex parte, but are now inter partes and have been challenged on the record with cross examination of witnesses, documents and the like. And that case is now going into discovery. And this is why a stay is appropriate. So you're saying the rule 38 procedure won't put limits on, on the Ontario procedure in any way? The rule 38 procedure puts limits on Aljabri, on what Aljabri can introduce, but that proceeding can't, for example, stay the action in the Ontario court. It can't dismiss the action in the Ontario court. It's simply a determination as to whether information that he has alleged he needs is both sensitive and relevant. And I would note there's been. If they say, if they say he can't use it, what does that do to the Ontario proceeding? The Ontario court will have to address that and deal with that, which is another reason why stay makes such eminent sense here, because all of those proceedings are happening in Canada and moving forward. We have no idea what ruling, what determination the Canadian federal court will make with respect to what of this evidence he's claiming he needs is even relevant. We have no idea what effect that might have on the Ontario proceeding. And there's no reason to be suspicious or distrustful of the Ontario court. We've cited a long line of cases going back over a hundred years of going up to the Supreme court of the United States, granting comedy, not just to Canadian courts in general, but this specific court in Ontario, that they have, they respect all of the same due process rights that we, we respect here. And on contrary to Mr. Gershengorn's argument in his briefs, we're not asking the court to adopt wholesale MREBA order. We're asking the court to give effect to a receivership order over specific properties and to give comedy to the findings that were made in the proceedings. If I could make two more points. Before you do counsel, did you cite any case? Did you come across any case in which a Massachusetts Commonwealth court has entered an attachment based on comedy, Canadian courts or courts from any other country? Yes. So, um, we've cited in our briefs, uh, judge Burroughs opinion in the university of Notre Dame in England case. Uh, the site for that is 2016 Westlaw for one, three, eight, four, seven, seven, seven, uh, which granted an attachment under rule 4.1 based entirely on an arbitral liability determination from the United Kingdom. And it's just final. So interestingly, the liability determination was final. The damages was not, but judge Burroughs also held that it did not constitute a foreign judgment that would be entitled to recognition under Massachusetts foreign judgment recognition law, nonetheless, granted comedy to it. Uh, and, and, and, and that was affirmed by this court. Um, we've cited other cases as well, um, that are not from Massachusetts, but from, from other courts that recognize that comedy can be granted to interim orders. And the best example of this, your honors is in the bankruptcy context context in transnational bankruptcy proceedings, there are orders all the time, uh, liquidation orders, the appointment of trustees and the like that are given effect in United States proceeding based entirely on the doctrine of international comedy that are not final judgments that are not subject to judgment recognition statutes. And that authority is cited, uh, in the air products and chemicals case from the Eastern district of Pennsylvania that we cite in our briefs. Um, we've, we've, uh, so we've cited a number of cases for that principle and, and the point isn't that it's necessarily, um, entitled to sort of conclusive judgment and recognition, but that the district court should have applied a comedy analysis. It's a fact intensive, uh, analysis that requires a number of factors and similarity of parties, which one was filed first, uh, did the, the, the, the context of the foreign legal pursuit proceeding and the like. We laid them out in our brief, but the district court didn't consider any of those factors. It didn't analyze the question of what effect if any ought to be given. And, and, and remember the standard that we were trying to, um, trying to meet with respect to attachment was a reasonable likelihood, uh, of success on the, on the attachment, which is a lower standard of proof. And we were forced to meet for either the Morava order, uh, or the receivership order. Uh, last point, um, there was discussion, uh, unless there are questions from the court, um, there's a discussion about the assertion of the privilege, uh, being unusually broad. Um, the privilege assertion, if you read the, the, the papers that the government filed below and from the, from the DNI, it is aimed at the threat that I'll job remade to disclose confidential information or disclose classified information that was nonspecific. So unlike cases like Reynolds or, um, uh, uh, in resealed case where you had specific documents that the defendants had asked for, or unlike in Wikimedia, where the defendant, or the plaintiffs had issued 83 discovery requests on the government, there aren't specific documents or requests for the government to object to, or to lay out specifically it's in his privilege assertion. All there is our job is sort of vague threats that he made in his removal motion and in his other papers. So there's no way the government's privilege assertion could be specifically tailored to something narrower than that. And we've cited cases in our reply brief that had identically a broad privilege assertions. Um, the point being in, in none of these cases, and none of the cases, Mr. Gershengorn mentioned in, in, in his argument or in his briefs has a court dismissed at the pleading stage in this context, without a recommendation from, from the government. It is there simply was not enough in the record. The case should have been allowed to at least proceed to motions that could have been filed with the district court and motion to dismiss by the plaintiffs, our motion for prejudgment attachment and motion to stay. All of those could be safely litigated under the government's protective order without any prejudice to any party, as opposed to dismissing our entire action against us, which ends on a litigation and poses great prejudice to us for reasons that we've explained, unless there are further questions. Thank you. Counsel, uh, any of my colleagues have any more questions? No. Okay. Thank you very much. Thank you. That concludes arguments for today. This session of the honorable United States court of appeals is now recessed until the next session of the court. God save the United States of America. And this honorable court.